# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 21-cr-158 (MJD/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jorge Luis Atayde-Ortiz, Jr., | |
| Defendant. | |

On July 20, 2021, a grand jury indicted Defendant Jorge Luis Atayde-Ortiz, Jr. ("Defendant" or "Atayde-Ortiz") on a count of Conspiracy to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 1). (Dkt. 1.)

This matter is before the Court on Defendant's Motion to Suppress Evidence Obtained During Unlawful Search of Cell Phone Location Data (Dkt. 27) ("Motion").[1] This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. The Court held a hearing on the Motion on April 19, 2022. (*See* Dkts. 41, 42.) Thomas Hollenhorst, Assistant United States Attorney, appeared on behalf of Plaintiff United States of America ("the Government") and Eric Olson appeared on behalf of Atayde-Ortiz, who

---

[1] Defendant also filed a Motion to Suppress Evidence Obtained During Unlawful Search of 2013 Chevrolet Silverado with MN License Plate 5403XXX (Dkt. 28), but withdrew that motion at the April 19, 2022 hearing. (*See* Dkt. 42 ¶ 7.) (All page number citations are to the CM/ECF pagination unless otherwise noted.)

was present at the hearing. (*Id.*) Atayde-Ortiz filed a post-hearing brief in support of the Motion on May 3, 2022 (Dkt. 46); the Government filed a post-hearing opposition brief on May 10, 2022 (Dkt. 47); and Atayde-Ortiz filed a post-hearing reply brief on May 17, 2022 (Dkt. 48). For the reasons set forth below, the Court recommends that Defendant's Motion be denied.

## I.     BACKGROUND

On March 16, 2021, Detective Daniel Rose of the Rogers Police Department, who was then with the Anoka-Hennepin Narcotics and Violent Crimes Task Force, applied for and was issued a state search warrant by an Anoka County District Court Judge ("Warrant"). (Gov't. Ex. 1.) The Warrant authorized the installation and use of a pen register and trap and trace device, including caller identification, cellular tower location and service information, and Global Positioning System information and tracking for telephone number: 303-856-XXXX ("the Number"). (*Id.* at 8-15.)

In the application for the Warrant, Detective Rose stated that he was responsible for an ongoing criminal investigation involving Atayde-Ortiz, who Detective Rose believed was utilizing the Number in connection with possible violations of state and federal law relative to controlled substance sales. (*Id.* at 1-2.) In the affidavit supporting his application for the Warrant ("Affidavit"), Detective Rose stated that he has specialized training and experience investigating controlled substance offenses and that he had obtained a confidential informant ("CI") while conducting a cocaine sales investigation. (*Id.* at 2.) Detective Rose stated that the CI's full name and date of birth were known to him, and that the CI advised him that "within the past 60 days, he/she

2

ha[d] purchased greater than 100 grams of cocaine from a male the CI kn[ew] as 'junior' and believe[d] the real name to be Jorge." (*Id.*)  Detective Rose attested that the CI provided him with a link to a map that showed the location of "Junior's" residence, which the CI described as a town house "in the cul-de-sac" with an address of 13XXX Echo Park Terrace in the City of Burnsville (the "Residence"). (*Id.*)  Detective Rose further represented that the CI had previously been to the Residence as an invited guest. (*Id.*) According to Detective Rose, the "relationship between the CI and Junior is a drug dealer/friend type of relationship." (*Id.* at 3.)  The CI provided Detective Rose with the Number and Detective Rose "lawfully viewed a historical text message between Junior's phone number and the CI's." (*Id.*)  On March 10, 2021, Detective Rose conducted a search on "CLEAR," which he described as a law enforcement informational search tool, that showed the Number was affiliated with "JORGE ATAYDE." (*Id.*)

Detective Rose stated that law enforcement identified "Junior" as "Jorge Luis Atayde-Ortiz [date of birth]" and that the CI positively identified a photograph of Atayde-Ortiz provided by Detective Rose. (*Id.*)  The CI informed Detective Rose that "Jorge has a black Chevrolet Silverado and the Silverado has a hidden compartment in the rear door that the CI advised that Jorge has used for transporting illegal drugs." (*Id.*) Detective Rose drove by the Residence on February 17, 2021 and again on March 15, 2021, located a black Chevrolet Silverado truck with Minnesota license plate number 5BYXXX in the driveway, and ran the plate number on March 11, 2021, which showed it was registered "to Jorge Luis Atayde Ortiz [date of birth] and Jorge Luis Jr. Atayde [date of birth] at [the Residence]." (*Id.*)  Detective Rose attested that based "on a subject

3

workup from the North Central HIDTA Investigative Support Center, [he] believe[d] the actual legal name of the target subject [to] be Jorge Luis Atayde-Ortiz Jr. [date of birth]." (*Id.*)  According to Detective Rose, the CI spoke to Atayde-Ortiz within the past twenty-one days of March 12, 2021, and the CI informed Detective Rose that Atayde-Ortiz had "plans to resupply with greater than 100 grams of cocaine." (*Id.*)

Detective Rose conducted a record check on Atayde-Ortiz on May 15, 2020, which revealed a prior weapons assault call by Atayde-Ortiz's sister in-law to the Residence, which led to Atayde-Ortiz's arrest.  (*Id.*)

Detective Rose stated that Atayde-Ortiz was issued a separate Dakota County warrant on March 15, 2021 to place a mobile tracking device on the black Chevrolet Silverado registered to Atayde-Ortiz, but that warrant had not yet been executed.  (*Id.* at 4.)  Detective Rose called T-Mobile on March 15, 2021, and a T-Mobile representative confirmed that T-Mobile provided service to the Number.  (*Id.*)  Detective Rose stated that he believed that tracking the Number would assist "in the investigation and possibly show the area of the location of the target when he resupplies [and that it] is suspected that he may resupply out of state." (*Id.* at 3.)

## II.   DISCUSSION

Atayde-Ortiz moves to suppress evidence obtained as a result of the Warrant because: (1) the Affidavit lacked probable cause as it depends on information provided by the CI but did not provide a sufficient basis for the issuing judge to determine that the CI was reliable; and (2) the Affidavit lacked probable cause because it failed to include facts showing an independent corroboration of information received from the CI.  (Dkt.

4

27 at 1-2; *see also* Dkt. 46 at 2-10.)  Atayde-Ortiz also argues that his Motion should be granted because the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984), is inapplicable to the Warrant.  (Dkt. 48 at 2-7.)

The Government responds that the Warrant was supported by probable cause because there was sufficient information in the Affidavit to establish the reliability of the CI; Detective Rose corroborated almost every detail provided by the CI; and even if the Warrant was not supported by probable cause, the *Leon* exception applies because Detective Rose acted in good faith.  (Dkt. 47 at 4-7.)

**A.     Legal Standard**

A search warrant is valid under the Fourth Amendment when supported by probable cause.  *United States v. Gabrio*, 295 F.3d 880, 882 (8th Cir. 2002).  Probable cause "exists when a 'practical, common-sense' inquiry that considers the totality of the circumstances set forth in the information before the issuing judge yields a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  With respect to the cell site location information obtained from GPS phone tracking, there must be a fair probability that evidence of suspected narcotics dealing would be found in data generated by the tracking of the cellular phone at issue. *See United States v. Stachowiak*, No. 18-CR-296-SRN-KMM, 2019 WL 3292048, at *7 (D. Minn. Apr. 23, 2019), *R. & R. adopted*, 2019 WL 2560519 (D. Minn. June 21, 2019); *see generally United States v. Carpenter*, 138 S. Ct. 2206, 2217-20 (2018).  "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of

everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)).

"An issuing judge's 'determination of probable cause should be paid great deference by reviewing courts' and should be upheld if the judge had a 'substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *Stevens*, 530 F.3d at 718 (quoting *Gates*, 462 U.S. at 236) (cleaned up). The proponent of a suppression motion on the basis of a Fourth Amendment violation bears "the burden of establishing that his . . . Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

**B.    Reliability of the CI and Independent Corroboration of Information**

Atayde-Ortiz argues that the Affidavit does not include sufficient facts to establish the reliability of the CI and does not describe "when, where, or in what" the alleged cocaine transaction between the CI and Atayde-Ortiz occurred or "when, where, from whom, or in what manner" Atayde-Ortiz intended to resupply the alleged future cocaine transaction. (Dkt. 46 at 2-4.) Citing *United States v. Little,* 735 F.2d 1049, 1055 (8th Cir.

6

1984), Atayde-Ortiz argues that there was nothing in the Affidavit to show that the CI "has a track record of supplying reliable information" and that the Affidavit does not "even make the conclusory claim that the [CI] is 'reliable.'" (*Id.* at 5.) Atayde-Ortiz also argues that the officer's minimal independent corroboration of information failed to satisfy probable cause requirements and contends that the information corroborated by the officer were merely innocent facts that are insufficient to establish probable cause. (*Id.* at 5-10.)

"Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." *United States v. Morales*, 238 F.3d 952, 953 (8th Cir. 2001) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir.1993)). It is not essential that an affiant aver that an informant was previously reliable. *See United States v. Harris*, 403 U.S. 573, 581-82 (1971) ("To be sure there is no averment in the present affidavit, as there was in *Jones*, that the informant had previously given 'correct information,' but this Court in *Jones* never suggested that an averment of previous reliability was necessary. Indeed, [ ] the inquiry is, as it always must be in determining probable cause, whether the informant's present information is truthful or reliable."). "[A]lthough, a tip received from a known informant will readily support a finding of probable cause, a tip received from an anonymous informant requires 'something more,' usually in terms of independent police corroboration, before probable cause may arise." *United States v. Nolen*, 536 F.3d 834, 840 (8th Cir. 2008) (citing *Gates*, 462 U.S. at 227, 241) (cleaned up). In determining whether the informant's tip

7

has been corroborated, even innocent activity can provide sufficient support. *See United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (citation omitted). There is, however, no mandate that every detail must be corroborated. *See Gladney*, 48 F.3d at 313 ("When an informant's information is at least partly corroborated . . . attacks upon credibility and reliability are not crucial to the finding of probable cause.") (quotations and citation omitted).

In the Affidavit, Detective Rose stated that the "CI's full name and date of birth [were] known" to him. (Gov't. Ex. 1 at 2.) The Eight Circuit has held that:

> [W]hen the informant is known [to law enforcement], it is proper to give them more credence than anonymous informants because 'they can be held responsible if the allegations turn out to be fabricated.' While it is true that some independent verification is required when a known informant is without a track record of reliability, corroboration of even minor or innocent details may be sufficient to establish probable cause.

*United States v. Reed*, 25 F.4th 567, 570 (8th Cir. 2022) (citations omitted); *see also Nolen*, 536 F.3d at 840 ("In addition to there being a distinction between known informants and anonymous informants, there is also an important distinction between the two types of known informants: reliable informants and unproven informants. Reliable informants are individuals who have a track record of supplying reliable information to law enforcement officers. Information supplied by such parties may be sufficiently reliable to support a probable cause finding. Unproven informants are individuals without a track record of supplying information to law enforcement officers. Though less reliable than informants with a proven record, unproven informants are more reliable than anonymous tipsters because the police can hold them responsible for false information.

Nevertheless, information supplied by such individuals requires some independent verification to establish reliability. Independent verification occurs when the information (or aspects of it) is corroborated by the independent observations of police officers.") (cleaned up).

Atayde-Ortiz cites to *Little*, *supra*, in support of his arguments, however the facts of that case are distinguishable from those presented here. Unlike the affiant in *Little* who did not do any investigation to corroborate the information provided by informants, *see* 735 F.2d at 1054-55, Detective Rose did not take the information received from the CI at face value. Instead, he independently conducted a search on "CLEAR" which showed the Number was affiliated with Atayde-Ortiz; showed the CI a photo of Atayde-Ortiz, resulting in the CI's positive identification of Atayde-Ortiz as "Junior"; confirmed that a black Chevrolet Silverado was registered to Atayde-Ortiz, which was consistent with the CI's statement that Junior drove a black Chevrolet Silverado; and drove by the Residence on two separate occasions, during which time he observed the black Chevrolet Silverado in the driveway. (*See* Gov't Ex. 1 at 1-3.) Detective Rose's investigation corroborated the information provided by the CI. *See United States v. Evans*, 4 F.4th 633, 636-37 (8th Cir. 2021) (finding an affidavit contained sufficient corroborated information in part because the officer: (1) independently verified the defendant's address and criminal record; (2) conducted multiple types of surveillance at the defendant's house; and (3) verified the defendant's identity by asking the source to look at a picture); *see also United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) (finding independent verification of type of car driven by suspect and suspect's residence were "minor,

9

innocent details [that] can suffice to establish probable cause") (internal quotation marks omitted); *United States v. White*, Case No. 4:20-CR-363 JAR/NAB, 2022 WL 1271544, at *4 (E.D. Mo. April 1, 2022) (finding an affidavit contained sufficient corroborated information where although the officer did not provide details about the informant's reliability, he independently confirmed details provided by the informant by verifying the defendant's address and the description of the vehicle driven by the defendant).

Moreover, the CI provided first-hand information that within the past 60 days, he/she had purchased greater than 100 grams of cocaine from Atayde-Ortiz; provided Detective Rose with a link to a map that showed the location of Atayde-Ortiz's residence which the CI stated he had previously visited as an invited guest; had a "drug dealer/friend type of relationship" with Atayde-Ortiz; stated that Atayde-Ortiz's black Chevrolet Silverado had a hidden compartment in the rear door that he used for transporting illegal drugs; provided Detective Rose with the Number and showed Detective Rose a historical text message between the CI and the Number; and stated that within the past 21 days of March 12, 2021, he spoke with Atayde-Ortiz who informed the CI that he planned to resupply over 100 grams of cocaine. This detailed first-hand information by the CI also supports a finding of probable cause. *See Evans*, 4 F.4th at 637 (finding "the 'richness and detail' of the source's firsthand observations also support a finding of probable cause here. . . . The source's firsthand observation of the [defendant's] drug sales combined with specific and detailed descriptions provided a fair probability that evidence of a crime would be found."); *see also Reed*, 25 F.4th at 569-570 (rejecting the defendant's argument that a controlled buy or similar corroboration

was needed to establish the reliability of a known informant where the informant had purchased heroin from the defendant and thus, had first-hand information of the defendant selling heroin); *Nolen*, 536 F.3d at 840-41 (stating that because the informant was an identified, but unproven informant, "her statement is entitled to some credibility based on the fact that she could be held accountable if she made a false statement to a police officer. Accordingly, the further corroboration needed to evaluate her accusations to probable cause is lessened."); *White*, 2022 WL 1271544 at *3 (finding an officer's affidavit was supported by probable cause where the informant positively identified a photo of the defendant, executed the affidavit along with the officer, and provided details of his "firsthand observations of [the defendant] in his home with narcotics and weapons.").

Atayde-Ortiz argues that the May 15, 2020 assault call to the Residence is irrelevant to the question of whether tracking Atayde-Ortiz's phone and movements would reveal evidence that he was engaged in a conspiracy to distribute cocaine, and that Detective Rose's inclusion of this information means "he knew the rest of the affidavit was infirm." (Dkt. 48 at 5-6.) The Court has not considered the statements about the May 15, 2020 assault call when assessing probable cause, but rejects Atayde-Ortiz's argument that inclusion of these details means Detective Rose knew the rest of the affidavit was insufficient in the absence of any supporting authority or any evidence supporting that inference. The Court has also considered Atayde-Ortiz's argument that the historical text message apparently did not contain any incriminating information. (*Id.* at 6.) Nevertheless, the fact that the CI had exchanged even an innocent text message

11

with the Number associated with Atayde-Ortiz corroborates the fact that the CI had a relationship with Atayde-Ortiz.  *See Tyler*, 238 F.3d at 1039 ("Even 'the corroboration of minor, innocent details can suffice to establish probable cause.'") (quoting *United States v. Ramos*, 818 F.2d 1392, 1397 n.7 (8th Cir. 1987)).

As stated above, the Eight Circuit has explained that "[w]here some information is independently corroborated, it is permissible for the issuing judge to conclude the informant and the remaining information provided are reliable, even if uncorroborated. Corroboration of minor, innocent details can suffice to establish probable cause." *Evans*, 4 F.4th at 637 (cleaned up).  Here, through his surveillance and investigation, Detective Rose confirmed Atayde-Ortiz's address, a relationship between Atayde-Ortiz and the CI, Atayde-Ortiz's vehicle information, and obtained a positive identification of Atayde-Ortiz from the CI.  While these may be innocent details, they sufficiently corroborate the CI's information for the purposes of probable cause.  The Court therefore recommends that the Motion be denied.

## C.     The *Leon* Good-Faith Exception to the Warrant

Because the Warrant was supported by probable cause (as set forth above), the Court need not determine whether the good-faith exception set forth in *Leon*, *supra*, should apply.  468 U.S. at 897.  The Court finds, however, that even if the Warrant was lacking in probable cause, Detective Rose or any other officer's reliance on the Warrant would have been reasonable under *Leon*.

Under *Leon*, "evidence seized pursuant to a search warrant issued by a [judge] that is later determined to be invalid[] will not be suppressed if the executing officer's

reliance upon the warrant was objectively reasonable.'" *United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). In *Leon*, the Supreme Court stated that "'searches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate [judge] normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" 468 U.S. at 922 (citations omitted).

However, there are certain instances when "the purpose of the exclusionary rule—deterring police misconduct—will not be served by suppressing illegally seized evidence." *United States v. Martin*, 833 F.2d 752, 755 (8th Cir. 1987); *Leon*, 468 U.S. at 922-23. "When a police officer acts in an objectively reasonable manner in reliance on a subsequently invalidated search warrant, there is no rational reason for suppressing the fruits of the search." *Martin*, 833 F.2d at 755. The Court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 923 n.23. The reviewing court should consider the totality of the circumstances, "including any information known to the officer but not presented to the issuing judge." *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015) (citation omitted).

In this regard, evidence obtained as a result of an unconstitutional search should be suppressed under the following circumstances:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

13

(2) when the issuing judge wholly abandoned his judicial role in issuing the warrant;

(3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

(4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Houston*, 665 F.3d at 995 (quoting *Proell*, 485 F.3d at 431). "In determining the presence of good-faith reliance on a judge-issued search warrant, the court must consider [the] totality of circumstances, including information not presented to the judge issuing the warrant but known to the police officers." *United v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011)). With respect to the third exception, the Eighth Circuit has explained: "'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *Proell*, 485 F.3d at 432 (quoting *Carpenter,* 341 F.3d at 670).

Here, the Court does not find that the Affidavit was intentionally or recklessly misleading, or that the issuing judge wholly abandoned her judicial role in issuing the search warrant. As to the remaining exceptions, the Court has already concluded that the Affidavit provided an adequate factual basis for the issuing judge to have found probable cause. In view of the law cited in Section II.A, *supra*, and based on all the facts and circumstances of this case, the Court also concludes that it was not "entirely unreasonable" for law enforcement officers to rely on the judge's issuance of the

14

Warrant.

\* \* \*

In sum, having found that probable cause supports the Warrant, and that the *Leon* good-faith exception applies, the Court recommends that Defendant's Motion be denied.

### III. RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT** Defendant's Motion to Suppress Evidence Obtained During Unlawful Search of Cell Phone Location Data (Dkt. 27) be **DENIED**.

DATED: June 16, 2022                             *s/Elizabeth Cowan Wright*
                                                 ELIZABETH COWAN WRIGHT
                                                 United States Magistrate Judge

### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).